SWARTHOUT, Respondent, vs. SWARTHOUT and others, by guardian *ad litem*, Appellants.

*May 23 — June 20, 1901.*

*Appeal: Judgment: Wills: Construction: Precatory trust: "Provision"
for after-born children.*

1. The decision of the circuit court upon an appeal from the county court, though in form an order, is a judgment and appealable as such.
2. A will gave all the testator's property to his wife, but stated that it was his wish that such property "or so much thereof as my said wife may be possessed of at her decease shall go to or be by her

given to our child or children, if any there' be then living." At his death the widow was of an age rendering a second marriage among the probabilities. He left three minor children, two being girls and the youngest a boy, two of whom were born after the execution of the will. The estate was so large that the testator must have expected that the income thereof, under proper management, would exceed the amount necessary to support his widow in comfort during her life and provide for the support and education of the children. *Held*, that the will should be read as intending to give the property to the widow for life, with remainder over to such of testator's children as should survive her, and making her a trustee of the property so far as required to effect that purpose.

3. If such will were construed to give the widow the whole estate absolutely, it could not be sustained as against the two children born after its execution. [Whether, when construed as giving a contingent remainder to such children, it makes a "provision" for them, within the meaning of sec. 2286, Stats. 1898, not determined.]

APPEAL from a judgment of the circuit court for Monroe county: O. B. WYMAN, Circuit Judge. *Reversed.*

Frank Willis Swarthout, deceased, disposed of his property by will as follows:

"I give, devise and bequeath unto my wife, *Cora F. Swarthout*, all and singular my property and estate real and personal.

"It is my wish that such property and estate above devised, or so much thereof as my said wife may be possessed of at her decease, shall go to or be by her given to our child or children, if any there be then living.

"I hereby nominate my said wife as executrix of this will."

The will was duly admitted to probate in the county court of Monroe county. Thereafter, upon the affidavit of *Cora F. Swarthout* to the effect that the debts of the estate would not exceed $200 and the expense of administering the estate $100, a motion was made in her behalf for permission to take possession of and handle the estate as sole beneficiary under the will, pursuant to sec. 3795, Stats. 1898, upon her giving a bond in the sum of $600 for the payment of the debts. The application was opposed by the three minor children of deceased and plaintiff, who were represented by

C. M. Masters, their duly appointed guardian *ad litem*. Representations were made in behalf of such minors that the personal property of the estate was of the value of $60,000 or more. No proof was presented by or on behalf of the executrix as to the value of the estate or any part thereof, or of what the estate was composed. The motion was denied and the executrix was ordered to file with the court, by a day named, a schedule of the personal property of which the testator died possessed.

Such proceedings were thereafter duly had that the matter of the right of the executrix to administer the estate as sole beneficiary was presented to the circuit court for Monroe county, an appeal being taken from the order before mentioned. The result of the hearing in the circuit court was that an order or judgment was entered, reversing the order of the county court and determining that the executrix should recognize as sole beneficiary under the will, and that she should be permitted to administer the estate as such upon giving a bond in the sum of $5,000. From that order or judgment this appeal was taken.

*C. M. Masters*, guardian *ad litem*, for the appellants, argued, among other things, that precatory words in a will, equally with direct fiduciary expressions, will create a trust. Beach, Wills, §§ 20, 215–217; *Warner v. Bates*, 98 Mass. 274; *Knox v. Knox*, 59 Wis. 172; Jarman, Wills (5th ed.), *385; 2 Woerner, Administration (2d ed.), § 415, p. 954; *Bacon v. Ransom*, 139 Mass. 117–119. In a devise of the entire estate to the wife, there is nothing incompatible with only a life estate being created, when the devise is followed by words indicating such intention. *Terry v. Wiggins*, 47 N. Y. 512; *Smith v. Bell*, 6 Pet. 68, 75, 76; *Tabor v. Tabor*, 85 Wis. 313; *Allen v. Boomer*, 82 Wis. 364. If the words of the will could be construed to give to the devisee the right to dispose of any portion of the testator's estate, the life estate would not necessarily be enlarged to a fee. *Jones v. Jones*,

66 Wis. 310, and cases there cited; *Terry v. Wiggins*, 47 N. Y. 512; *Smith v. Bell*, 6 Pet. 68; *Stuart v. Walker*, 72 Me. 146, 39 Am. Rep. 311; *Larsen v. Johnson*, 78 Wis. 300; *Derse v. Derse*, 103 Wis. 113. To adhere to the construction sought by the respondent would cut off the only provision made for the children of the testator, and would be contrary to the settled rule that "an heir can only be disinherited by express devise or necessary implication so strong that a contrary intention cannot be supposed." 3 Jarman, Wills (5th Am. ed. by Randolph & T.), 704, rule 5; *Gelston v. Shields*, 78 N. Y. 275.

*S. W. Button*, for the respondent, contended, *inter alia*, that all children born or unborn are mentioned in this will and were in the mind of the testator, hence were not left out by accident or mistake. It shows a clear purpose to make no provision for them. Secs. 2286, 2287, Stats. 1898; *In re Donges's Estate*, 103 Wis. 511; *Verrinder v. Winter*, 98 Wis. 290; *Bresee v. Stiles*, 22 Wis. 120; *Moon v. Estate of Evans*, 69 Wis. 667; *Osborn v. Jefferson Nat. Bank*, 116 Ill. 130. If it is held that only a power is given to the widow to dispose of the property, her title to the whole would be absolute because of such power. Secs. 2107, 2108, 2110, 2112, 2278, Stats. 1898; *Larsen v. Johnson*, 78 Wis. 308; *Bamforth v. Bamforth*, 123 Mass. 280; *Campbell v. Beaumont*, 91 N. Y. 464; *Crane v. Wright*, 114 N. Y. 310; *Gifford v. Choate*, 100 Mass. 343; *Johnson v. Battelle*, 125 Mass. 453; *Lawrence v. Cooke*, 104 N. Y. 632; *Mitchell v. Morse*, 77 Me. 423; *Hinkle's Appeal*, 116 Pa. St. 490; *Deegan v. Ward*, 144 N. Y. 573, 578; *Foose v. Whitmore*, 82 N. Y. 405; *Barrett v. Marsh*, 126 Mass. 213; *Howard v. Carusi*, 109 U. S. 725; *Jones v. Bacon*, 68 Me. 34; *Stewart v. Walker*, 72 Me. 145. Even where a will expressly gives only a life estate to the widow, but with power to dispose of so much of the estate as is necessary for her support, with remainder over to children, it is held no trust is created. *Bamforth*

*v. Bamforth,* 123 Mass. 280; *Stevens v. Winship,* 1 Pick. 317; *Bishop v. Remple,* 11 Ohio St. 277.

MARSHALL, J. It is suggested by respondent's counsel that the order, so called, of the circuit court, is not appealable because it is merely interlocutory in character, not terminating an action and preventing a judgment from which an appeal could be taken. The determination of the matter in the circuit court was interlocutory as regards the proceedings in the county court, but a final determination of such matter in the former court. It was to all intents and purposes a final judgment and appealable as such, though it was, in form, an order. The statute (sec. 4037, Stats. 1898), regulating proceedings in the circuit court in such matters, provides:

"The circuit court may reverse or affirm in whole or in part the act appealed from and may render such judgment as may be proper or make such order therein as the county court ought to have made, and may remit the case to the county court for further proceedings in pursuance of the opinion of the circuit court, or may make any order, or take any action therein, or enforce its own judgment, as such circuit court may deem best."

The decision appealed from was rendered pursuant to that statute. It was the judgment of the circuit court on the matter presented for adjudication and must be tested, as to its appealability, by the statute on the subject of appeals from judgments. The final determination of appeals in the circuit court in such cases is characterized, in the words of the section referred to, as "a judgment," and that must necessarily be its character. Whether the determination of a court is an order or a judgment within the meaning of the appeal statute, cannot always be solved by mere form. The nature of the adjudication and of the proceeding must be considered. A proceeding upon appeal, as regards the appellate court, is an action, or a proceeding in the nature of

an action, and the decision is a final determination of the
rights of the parties in respect thereto.   Sec. 2882, Stats.
1898.   Every appeal to the circuit court, to all intents and
purposes, is an action in such court.   It is "an ordinary pro-
ceeding in a court of justice by which a party prosecutes
another party for the enforcement or protection of a right
or the redress or prevention of a wrong."   Sec. 2595, Stats.
1898.   In this case respondent, by her appeal from the de-
cision of the county court, instituted a proceeding in the
circuit court to redress the wrong, as alleged, committed by
the former court in refusing to recognize her as sole bene-
ficiary under her husband's will and to allow her to proceed
to administer the estate according to the statutes in such
cases.   The determination of the appeal was a final deter-
mination of the rights of the parties in respect to the matter
at issue as regards the power of the circuit court, hence a
judgment of that court.   Unlike the situation in *Jones v.
Roberts*, 84 Wis. 465, cited by respondent's counsel, here the
persons interested in the construction of the will adversely
to respondent had notice of the proceeding.   Such proceed-
ing necessarily turned on the meaning of the instrument,
and the question involved was litigated and decided.   It fol-
lows that the contention that the order, so called, of the cir-
cuit court, was not appealable, cannot be sustained; that
such order is in effect a judgment; and that appellants, as
parties thereto, aggrieved thereby, had a right to appeal
therefrom.

It is elementary law that precatory words in a will, fol-
lowing a bequest or devise in general terms, expressing a
desire or wish as to the ultimate use or disposition of prop-
erty devised or bequeathed, or some portion thereof, by the
person taking the title in the first instance, may be con-
strued as creating a trust in such first taker for the benefit
of the other person or persons named, if that, under all the
circumstances, appears clearly to have been the intent of the

testator, and such intention can be read from the language used by him by the aid of those liberal rules which obtain for the purpose of giving effect to testamentary words. The circumstances of the use of the words which call for such construction are so various that it is well-nigh impossible to refer to adjudged cases as governing authorities in any particular case presented to the court for decision. Courts take more liberties in the construction of wills than of any other written instruments, judging in each case, as to the intention of the testator, by established judicial rules, without any governing regard for the result in any other case. That necessarily must be so from the very nature of the subject involved. Justice WILMOT, in *Keiley v. Fowler*, Wilm. Op. 319, well described the manner in which a will must be viewed in determining its meaning, in the following language:

" Every case stands upon the evidence of the testator's intention, arising out of each will. In questions of intention, cases, unless they coincide in words and every other circumstance, never assist, but perplex the exposition. A will is the picture of a man's mind; and one may as well look at the picture of one man to know the person of another, as look at the will of one mind to know the mind of another."

It will serve no valuable purpose to go at length into a discussion of the multitude of cases that exist, where words expressing a wish, hope, desire, or request have been construed as equivalent to words of command and to create a trust with the same definiteness as if the intention of the testator were made manifest by language in its literal sense. The subject was very fully discussed by Mr. Justice TAYLOR, speaking for the court, in *Knox v. Knox*, 59 Wis. 172, and several general rules were there deduced from the teachings of courts and eminent text-writers, which need no addition, and by the aid of which the intention of the testator, in cases of this kind, can be determined with the highest degree of certainty practicable by judicial construction. Such

rules are as follows: (1) It is not necessary that technical language should be used to create a trust. It is enough that the intention is apparent. (2) Precatory words used in a will,— that is, words of recommendation, entreaty, request, wish, or expectation,— addressed to a devisee or legatee, may be sufficient to create a trust in favor of the person or persons in whose favor such expressions are used. (3) In order to determine whether precatory words in a will create a binding trust, the real question always is whether the wish, desire, or recommendation expressed by the testator is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion. (4) In determining that precatory words in a will create a trust, the courts give great weight to the fact that the person or object to which the precatory words apply is clearly pointed out, and the *quantum* of the estate to be given to such person or object is also clearly defined.

By applying the foregoing rules to the will in question, the intent of the testator is not difficult to discover with reasonable certainty. He left a widow of an age which rendered a second marriage on her part among the probabilities, and three minor children, the two older ones being girls and the youngest of the three being a boy. The last two of the children were born after the will was executed. He left an estate so large that he must have expected that the income thereof, under proper management, would exceed the amount necessary to support his widow in comfort during her natural life and provide for the support and education of his children. One would expect under such circumstances that a man would not leave it within the power of his widow to handle his estate as her absolute property, not making any certain provision whatever for his infant children. The persons to whom the precatory words apply

are certain, and likewise is the *quantum* of the estate to be given to them, except in so far as it may be affected by the amount of such estate which the widow may legitimately consume during her life. Less persuasive considerations than those mentioned, in *Knox v. Knox*, 59 Wis. 172, led this court to conclude that the precatory words there considered were intended to be words of direction and command. The words in question were addressed by a husband to a wife. That is an important consideration. It is reasonable and natural that a husband should declare his determination as to what shall be done with his estate in the "language of civility," with the conviction that nothing more need be said, where all the circumstances are in harmony therewith, to secure an absolute disposition of his property in accordance with such determination. Here the persons to whom the precatory words refer, in view of their age and the amount of the testator's property and the age of the mother, had claims upon his bounty quite as strong, and which he would be quite as likely to recognize, as hers. The fact that two children were born after the making of the will is significant, particularly since the youngest was a boy. In that situation, how can the court say that the precatory words were not intended to govern the conduct of the wife but were merely suggestive as to what, in the judgment of the testator, would be a reasonable exercise of the widow's discretion in the disposition of her own property? In our judgment such a conclusion would be highly unreasonable. The opposite intent seems very clear and in harmony with every part of the will.

While, as said in *Knox v. Knox*, 59 Wis. 172, apt words were used to convey a full title to the estate to the wife, that circumstance is consistent with the view that the conveyance was in trust for the object subsequently indicated. If that object had been expressed by using words in their literal sense, the words of conveyance would have been the

same. There is nothing in the will to indicate that an absolute estate was intended to be created in the wife, other than the use of the mere technical words of conveyance, which words would have been used in any event. The language which followed the words of conveyance, under all the circumstances, repels the idea that they were intended to place the estate of the testator under the absolute control of the wife to be enjoyed and disposed of as her individual property. There are no words of inheritance or words declarative of any intent that the widow shall have the right to enjoy the estate as hers absolutely, as in many cases where precatory language has been held to be merely advisory and to leave the execution of the wish of the testator to the discretion of the persons to whom it was addressed. There were no words guarding against the precatory expression being construed as a direction or command, as in *Tabor v. Tabor*, 85 Wis. 313, where the will declared that the wish expressed, as to what should be done with the estate, was not to be construed as limiting the ownership and power of disposition as owner, indicated in the words of absolute gift. From any standpoint we can reasonably view the language under consideration, as it seems, it appears to satisfy every judicial rule recognized as a safe guide in considering such testamentary expressions as creating a trust in the person to whom they are addressed, and a binding obligation upon the trustee to administer the subject thereof accordingly.

It follows that we must hold that the will in question should be read as intending to give the property of the testator to the respondent for life, with remainder over to such of his children as may be living at the termination of the life estate, and making respondent a trustee of the property so far as required to effect that purpose. It is not necessary to indicate here the precise scope of respondent's power over the property as the first beneficiary thereof or to decide finally that she is entitled to a life estate in the

entire property. Having determined the nature of her interest in the estate to the ultimate extent thereof, which in any view she is entitled to, and that the decision of the trial court that she is the sole legatee and devisee under the will is erroneous, the other questions involved may be left for now to the court that has to do with supervising the administration of the trust, which court will require the proper bond to be given by respondent to protect the interests of her children.

In the foregoing, as will be seen, we have only intended to construe the language of the will, showing that the testator did not intend that respondent should possess all his property as hers absolutely. Whether notwithstanding the conclusion reached she has a life estate in the property as against the two children born after the making of the will, depends upon whether a provision was made for them thereby. Sec. 2286, Stats. 1898. The construction we have given to the will is absolutely essential to sustain it at all as against the two younger children. If notwithstanding such construction the contingent remainder provided for such children be not considered a provision within the meaning of the section referred to, then they are entitled to share in their father's estate the same as if he had died intestate. The fact that there was only one child when the will was made and that the contingent remainder was left to the testator's child or children living at the death of his wife, indicates that he had in mind the probability of after-born children and intended to make some provision for them. *In re Donges's Estate*, 103 Wis. 497. It will be readily seen that the circumstance of there being children born after the date of the will stamps the judgment appealed from as unquestionably erroneous.

Since no further proceedings in this case need be had in the circuit court the order or judgment appealed from will be reversed and the record remanded direct to the county

court, pursuant to sec. 4037, Stats. 1898, with directions to such court to proceed in the settlement and administration of the estate in accordance with this opinion.

*By the Court.*— The order or judgment appealed from is reversed and the record directed to be transmitted to the county court of Monroe county, which court will upon receipt of such record proceed in the settlement of the estate and administration thereof in accordance with this opinion. The taxable costs in this court on both sides will be paid out of the estate.